UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ETN CAPITAL, LLC,

     Plaintiff,

v.                                                              Civil Action No.    8:26-cv-1787

SHENZHEN SHI XIAOLIN DASEN
TECHNOLOGY CO., LTD. D/B/A
SLINDAS, HOMTOK,                               **JURY TRIAL DEMANDED**

     Defendant.

_____/

## **MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff, ETN CAPITAL, LLC ("Plaintiff" or "ETN") seeks a temporary restraining order against SHENZHEN SHI XIAOLIN DASEN TECHNOLOGY CO., LTD. D/B/A SLINDAS, HOMTOK ("Defendant" or "Slin&Das"), to, among other things, cease infringing on ETN's patent. In support of its Motion, Plaintiff states as follows:

## I.    **BACKGROUND**

ETN is the owner of a U.S. Patent for "Vehicle leveling systems, devices and methods and computer program products for leveling vehicles using smart devices." (U.S. Patent No. 10,890,925 B2, hereinafter referred to as "'925 Patent"), which Defendant infringes. ETN is entitled to a TRO for several reasons. First, ETN's patent is presumed valid under 35 U.S.C. § 282, submits evidence to establish a *prima facie* case of utility patent infringement, and thus demonstrates the requisite likelihood of

success on the merits. Second, Defendant's infringing conduct caused and is causing ETN to suffer irreparable harm. Defendant's conduct erodes ETN's control of their patent rights, damaging ETN's reputation and goodwill, diminishing ETN's market share, and causing customer confusion. Simply, monetary damages will be inadequate to compensate ETN for Defendant's infringement.

Third, the equities weigh in favor of ETN. Plaintiff invested substantial funds to procure its patent. Yet, Defendant unlawfully takes advantage of that investment to ETN's detriment. Comparatively, Defendant, a willful infringer, is entitled to little consideration and any harm that may befall upon them under an *Ex Parte* TRO would be the result of Defendant's own infringement. Moreover, an *Ex Parte* TRO will serve the public by furthering the long-held public policy favoring the protection of patent rights. An *Ex Parte* TRO will provide incentive for other inventors and innovators to continue developing new devices or products without fear of the inability to enforce their patents.

Fourth, the requested scope of *Ex Parte* relief is appropriate because the Defendant operates out of China and can, with relative ease, evade enforcement actions and transfer assets outside of this Court's jurisdiction. Thus, an order restraining Defendant's assets is warranted. Unless Defendant's assets are frozen, ETN will be unable to properly account for or receive a monetary award. Accordingly, this Court should issue an *Ex Parte* TRO to enjoin the Defendant from infringing upon ETN's patent and grant the additionally requested equitable relief.

2

## II.   DEFENDANT'S INFRINGEMENT

A recreational vehicle ("RV") should be leveled whether in storage or in use for both practical and technical reasons. T. Fife Decl., attached as **Exhibit 1**, at ¶ 4.  Many RVs do not possess native leveling capabilities beyond raising and lowering of the front of the RV with manual or electric jacks. *Id.* To ensure the RV is level, and without the benefit of the patented invention of the '925 Patent, the driver must exit the vehicle, then manually assess the RV's position in relation to the ground underneath to determine if the RV is out of level. *Id.* at ¶ 5. While bubble levels may be attached to the side, front, and/or rear of an RV, the driver still must make an educated guess as to what adjustments are necessary to ensure that the RV is level with the ground underneath. *Id.* at ¶ 6. ETN's technology allows RV to know, and not guess, as to when their vehicle is level. *Id.* at ¶ 7.

The leveling system described in the '925 Patent includes a sensor device secured to a vehicle to sense an inclination or orientation of both pitch and a roll direction. *Id.* at ¶ 8. The leveling system also includes a smart device in communication with the sensor device to allow information received from the sensor device to be processed to provide measurements to a user and to determine the amount of adjustment needed without leaving the vehicle. *Id.* at ¶ 9.

1.   In or around February of 2026, ETN discovered that the Defendant begun infringing upon ETN's patent and selling the infringing product via online retailers, including Amazon.com, available at https://www.amazon.com/Bluetooth-

3

User-Friendly-Real-Time-Measurements-Batteries/dp/B0DCP655J6 (last accessed on July 9, 2026). *Id.* at ¶ 10. ETN filed a complaint with the Amazon Patent Evaluation Express ("APEX") program. *Id.* To date, Amazon did not remove Defendant's listing for the sale of the infringing product in the United States. *Id.* As a result, ETN obtained counsel to prosecute Defendant's infringement. *Id.* at ¶ 11. On or about April 2026, ETN through counsel examined the infringing product to confirm that it infringes the ETN Patent. *See* E. Kleinertz Decl., attached as **Exhibit 2**. On May 11, 2026, Plaintiff sent Defendant a letter of infringement and demanded that Defendant cease all sale of the infringing product. *Id.* at ¶ 18. However, to date, Defendant continues to infringe upon the '925 Patent by using, selling, and/or offering to sell infringing products. *Id.* at ¶ 19.

A sample of Defendant's product was ordered through one of Defendant's online retail websites and inspected by counsel for ETN. *Id.* at ¶ 10. The inspection confirmed that Defendant's vehicle leveler was infringing upon ETN's patent including, but not limited to, independent Claims 1 and 10. *Id.* at ¶ 15. ETN also discovered that the Defendant was manufacturing what looks to be an inferior product that was built with materials of a lesser quality than those manufactured by ETN. Ex. 1, at ¶ 12. As a result, purchasers of Defendant's vehicle leveler receive a leveler that does not provide the same, high degree of quality as an ETN leveler. *Id.*

If consumers purchased Defendant's leveler in the mistaken belief that it was actually produced by ETN, the consumer would be disappointed and have a lowered

4

perception of ETN and its products. *Id.* at ¶ 13. ETN's investment in establishing goodwill and consumer trust in its vehicle levelers will be severely damaged or destroyed if Defendant is permitted to continue selling an inferior product under the same name. *Id.* at ¶ 14.. Defendant's infringement and production of an identical product, sold through identical channels of trade to the same consumers means that consumer confusion will be inevitable, not just likely. *Id.* at ¶ 15. There is also good cause to believe that if ETN proceeds on notice to the Defendant of this Motion, given the nature of Amazon and Defendant's location of China, Defendant can easily and quickly change the ownership of or modify their e-commerce store account data in an attempt to thwart ETN's ability to obtain meaningful relief. *Id.* at ¶ 16.

If the Court issues a temporary restraining order, the continuing harm to ETN, its reputation, and its goodwill far outweighs any potential harm to the Defendant of being prevented from continuing to profit from their illegal activities absent a temporary restraining order. ETN brings this action and seeks temporary relief to protect its intellectual property, its goodwill, its reputation and its deceived consumers.

Accordingly, ETN respectfully requests that the Court preliminarily enjoin Defendant from infringing upon its '925 Patent.

### III.    LEGAL STANDARD

To obtain a temporary restraining order, ETN must demonstrate that it "is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Weighing all of

these factors, this Court "must balance the competing claims of injury. . . consider the effect on each party of the granting or withholding such request." *Deltec Bank & Trust Limited v. Michael Carbonara*, Case No. 25-20978-CIV-DAMIAN/D'ANGELO, 2025 WL 1913204 (S.D. Fla. July 9, 2025) (internal quotations omitted).

This Court may issue an *Ex Parte* TRO where immediate and irreparable injury, loss, or damages will result to the movant before the adverse party may be heard in opposition. *See* Fed. R. Civ. P. 65(b). Courts have recognized that civil actions against foreign, online infringers present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). An *Ex Parte* order preserves the status quo and prevents irreparable harm. *See Granny Goose Foods, Inc., v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974).

Further, an *Ex Parte* TRO is appropriate where, like the case here, the necessary subject matter and personal jurisdiction requirements are satisfied. This Court has original subject matter jurisdiction over the claims in this action under the Patent Act, 35 U.S.C. § 1, et seq., 28 U.S.C. §§ 1338(a)(b), and 28 U.S.C. § 1331, and venue is proper under 28 U.S.C. § 1391. This Court may exercise personal jurisdiction over the Defendant because the Defendant directly targets business activities toward consumers in the United States, including Florida, through the Defendant's online retail stores on an Amazon platform dedicated solely to the United States. Specifically, the Defendant is soliciting United States and Florida residents by operating one or more e-commerce

stores through which United States and Florida residents can purchase products that infringe upon ETN's patent. *See, e.g.*, *I play. inc v. D. Catton Enter., LLC*, Case No. 1:12-cv-00022-MR, 2013 WL 119659, at *5–9 (W.D. N.C. March 25, 2013). The Defendant commits tortious acts in Florida, engages in interstate commerce, and wrongfully caused ETN irreparable harm in this state.

## IV.   ARGUMENT

Again, to obtain a temporary restraining order, ETN must demonstrate that it "is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter*, 555 U.S. 7, 20 (2008).

### A.   ETN Will Likely Succeed on the Merits of Patent Infringement

ETN is highly likely to succeed on the merits of their patent infringement claim. The Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). To determine whether a violation of § 271(a) has occurred, this Court should (1) "construe the asserted claim[s]" and then (2) "determine whether the accused product contains each limitation of the properly construed claims, either literally or by a substantial equivalent." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1356–5 7 (Fed. Cir. 2005). All issued U.S. patents are afforded a statutory presumption of validity including the patents-in-suit. *See* 35. U.S.C. §§ 171, 282.

ETN is the lawful owner of the Patent at issue in this case. *See* Ex. 1, at ¶ 3. ETN submits extensive evidence that the Defendant makes, uses, offers for sale, sells, or imports into the United States for subsequent sale or use products that directly or indirectly infringe upon ETN's patent. *See generally* Ex.1, Ex. 2. The evidentiary record demonstrates that after ascertaining the meaning and scope of Plaintiff's patent claims, Plaintiff's properly construed claims have been infringed after analyzing Defendant's product against Plaintiff's patent. *Id.*; *Gallant v. Telebrands Corp.*, 35 F. Supp. 2d 378, 401 (D.N.J. 1998).

Utility patent infringement requires a two-step analysis. *Jetchill Ltd v. Shenzhen Jiarui Minghui Trading Co., Ltd*, No. 1:25-CV-23377-DSL, 2025 WL 3541860, at *16 (S.D. Fla. Nov. 26, 2025) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)). First, as a matter of law, the Court must ascertain claim language of the subject patent. *Id.* Second, the Court must compare the accused product against the interpreted claim to determine whether the product infringes the ascertained claims. *Id.* "Under the doctrine of equivalents, infringement may be found where an accused product performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention." *Id.*

The inspection of the Defendant's infringing products confirms in no uncertain terms that Defendant manufacturers, sells, and markets a product identical to ETN's and therefore infringes on its patent. Ex. 2, at ¶ 15. Moreover, when comparing Defendant's product to the '925 Patent, the product performs substantially the same

overall function or work described in the Patent's claims, in substantially the same way, to obtain substantially the same overall result. *Id.* at ¶ 16; *See Jetchill Ltd*, 2025 WL 3541860, at *16.

Upon receiving the Infringing Product, Plaintiff's counsel disassembled it to analyze its internal components. *Id.* at ¶ 11. The examiner downloaded the XPARKLE iOS application to an iPhone and paired the iPhone to the Infringing Product, confirming that the iPhone maintained wireless communication with the sensor device throughout testing. *Id.* at ¶ 12. During the inspection, it was observed that the XPARKLE iOS application presents adjustment pairs on the iPhone's display screen, with each adjustment pair consisting of a height adjustment amount and a corresponding adjustment direction needed to level a respective section of the vehicle. Each adjustment pair was represented by an arrow indicating the direction of the height adjustment alongside a numerical measurement indicating the height adjustment amount, and each pair was displayed adjacent to its respective section of the vehicle within the XPARKLE application's graphical user interface. *Id.* Upon changing the pitch and roll of the Infringing Product, it was further observed that the iPhone updated the display screen substantially in real time as one or more of the height adjustment amounts changed. *Id.* at ¶ 14.

The inspection confirmed that Defendant's vehicle leveler was infringing upon ETN's patent including, but not limited to, independent Claims 1 and 10. *Id.* at ¶ 15. Said another way, Defendant's vehicle leveler infringes upon ETN's patent. *Id.* Defendant possesses no license to ETN's Patent and are not authorized retailers of

9

ETN's products. Accordingly, ETN has establishes a *prima facie* case of patent infringement, and thus demonstrates a strong likelihood of success on the merits.

### B. ENT Has No Adequate Remedy at Law to Compensate for Defendant's Infringing Activity, and Has Suffered and Will Continue to Suffer Irreparable Harm Absent a TRO

ETN has no adequate remedy at law and will continue to be irreparably harmed absent a TRO. Because ETN possesses a valid patent and has established patent infringement, this Court may presume irreparable harm. *See Bell & Howell Doc. Mgmt Products Co. v. Altek Systems*, 132 F.3d 701, 708 (Fed. Cir. 1997) ("In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement."). Even beyond the presumption, ETN presents overwhelming evidence of irreparable harm. A causal nexus exists between Defendant's infringement, and the irreparable harm that Defendant causes ETN. *See Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). ETN suffered and will continue to suffer the loss of their exclusive patent rights, loss of market share that ETN may never be able to recover, immeasurable damage to ETN's goodwill and reputation as the creator and authorized provider of ETN's products. Ex. 1, at ¶ 19. *See Celsis*, 664 F.3d at 930 (holding that "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities" constitute irreparable harm).

When it remains difficult to quantify a particular harm, such difficulty weighs in favor of irreparable harm. *See Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002). It is difficult, if not impossible, to accurately calculate damages

from ETN's loss of control over its patent rights, loss of pricing power, diminished market share, and inability to exploit their protected device. *Id.* at ¶ 20. The extent of harm to ETN's reputation and goodwill and possible diversion of customers due to a loss in brand confidence is likewise unquantifiable. *Id.* at ¶ 21. Such collective harms are irreparable. *See Promatek Indus.*, 300 F.3d at 813 (holding that damage to goodwill was irreparable harm for which no adequate remedy at law exists*); see also Railway Co. v. Terminal Railroad Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages.").

Moreover, "Defendant's mere presence in the market of" RV levelers "causes Plaintiff[] harm in [its] overall claim of exclusivity and support [its] overall claim for irreparable harm to their market exclusivity." *SharkNinja Operating LLC v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule "A"*, No. 1:25-CV-25323-RAR/LFL, 2026 WL 637643, at *16 (S.D. Fla. Feb. 19, 2026)."Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Id.* (citing cases).

Importantly, a monetary judgment will be difficult to collect in this case. The "prospect of collecting money damages from a foreign defendant with few to no asset in the United States tips in favor of a finding of irreparable harm." *Bushnell, Inc. v. Brunton Co.,* 673 F.Supp.2d 1241, 1263 (D.Kan.2009). Defendant is a foreign entity who can easily disguise its true identities and can easily hide assets, justifying

11

entitlement to injunctive relief. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (holding that collection of monetary damages would be difficult because defendants were foreign corporations). In similar cases involving foreign infringers other district courts have found that money damages were insufficient. *See, e.g., Aevoe Corp. v. AE Tech Co., Ltd.*, No. 12-cv-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient."); *Otter Prods. v. Anke Group Indus. Ltd.*, 13-CV-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) ("[B]ecause Anke has no presence in the United States, it may be difficult or impossible for Otterbox to enforce a monetary judgement against Anke"); *Nike Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F. Supp. 3d 1177, 1179 (D. Nev. 2016) ("[B]ecause Bestwinn has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgement against Bestwinn."). Because ETN is afforded a presumption of irreparable harm, presents substantial evidence of the same, and faces substantial difficulties of recovering any monetary judgment from the foreign Defendant, ETN overwhelmingly demonstrates irreparable harm and is entitled to an *Ex Parte* TRO.

### C. The Balance of Equities Favors Granting ETN's *Ex Parte* TRO

ETN demonstrates (1) a prima facie case of patent infringement, (2) irreparable harm, and (3) a causal nexus between the Defendant's infringement and ETN's irreparable harm. Now, this Court should weigh the equitable considerations of the

parties' competing interests.  See *Ty, Inc.*, 237 F.3d at 895; see also *Abbott Labs*, 971 F.2d at 6, 11. Properly weighed, the equities favor entering a TRO. ETN, with a valid patent and that has been infringed, *see supra*, will likely succeed on the merits. *See* 35. U.S.C. §§ 171, 282. ETN also suffers, and will continue to suffer, irreparable harm, *see supra*, and is likely unable to recover monetary damages from Defendant, a foreign entity. *See Otter Prods.*, 2013 WL 5910882, at *2 (holding that plaintiffs would suffer irreparable injury through the loss of control of intellectual property rights, loss of consumer goodwill, and ability to exploit intellectual property). It was Plaintiff's investment upon what ETN has built its intellectual property, goodwill, and rights. Absent a TRO, ETN will be unable to justify the investment in its patent and Defendant will freely continue its infringement. Therefore, before even considering the Defendant's equities, or lack thereof, the balance of equities strongly favors Plaintiff.

On the other hand, there are no equities favoring Defendant, the direct infringer. As a willful infringer, this Court should afford little equitable consideration for any alleged harm caused by a TRO. Such harm is entirely self-inflicted. The Defendant willfully chose to infringe of ETN's patent and refused to remove its listing once on notice. Courts have refused to assign "harm" to defendants who assume such a risk. *See Celsis*, 664 F.3d at 931 ("[T]he preliminary record suggests that [the defendant's] losses were the result of its own calculated risk in selling a product with knowledge of [the plaintiff's] patent."). Accordingly, the equities heavily favor ETN.

13

### D. Public Policy Favors ETN's *Ex Parte* TRO

This Court should also consider the public interest, which when considered here, the public interest will be rightly served by an *Ex Parte* TRO. *See Apple Inc.*, 809 F.3d 633 (Fed. Cir. 2015). Public policy favors protection of rights secured by valid patents. *See Cobraco Manufacturing Co. v. Valley View Specialties Co.*, No. 90-CV-0284, 1990 WL 10072073, at *8 (N.D. Ill. Jan. 22, 1990). "[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his invention." *Apple Inc.*, 809 F. 3d at 647. Issuing an *Ex Parte* TRO will provide incentives for inventors and innovators to continue to develop new products and patenting inventions without fear of the inability to enforce the patents and stop infringers. Accordingly, the public interest favors granting an *Ex Parte* TRO.

### E. ETN Further Satisfies Grounds for an *Ex Parte* TRO

The Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. This Court has the power to not only enjoin the foreign Defendant's infringing activities, but also award additional reasonable relief to ensure their compliance with this Court.

#### i. An Ex Parte TRO Enjoining Defendants' Unlawful Conduct is Appropriate

In the current global economy where infringers can operate anonymously over the internet, especially via a retailer like Amazon, ETN's request for an *Ex Parte* TRO

is appropriate. ETN submits evidence that Defendant makes, uses, offers for sale, sells, and imports infringing products into the United States. *See generally* Ex. 1, Ex. 2. Thus, enjoining Defendants from further unlawful conduct is warranted. As argues *supra*, such relief is necessary to stop the ongoing harm to Plaintiffs' control over its rights, harm to Plaintiff's reputation and goodwill, and harm to unknowing consumers who purchase the Infringing Products—that fail to meet the quality standards associated with Plaintiffs' Products. In the instant case, an *Ex Parte* TRO is warranted because Plaintiffs cannot confirm the true identities or locations of the Defendants, or other Defendant internet stores selling Infringing Products.    Courts have repeatedly authorized immediate injunctive relief in similar cases involving the sale of infringing products. *See, e.g.*, *Tuf-Tite, Inc. v. Fed. Package Networks, Inc.*, No. 14-CV-2060, 2014 WL 6613116, at *29 (N.D. Ill. Nov 21, 2014); *Scholle Corp. v. Rapak LLC,* 35 F. Supp. 3d 1005, 1009 (N.D. Ill. 2014); *Nike, Inc.*, 166 F. Supp. 3d at 1178–79.

### ii.    Restraining Defendant's assets to Prevent Fraudulent Transfer of Assets is Appropriate

This Court has the inherent equitable authority to issue prejudgment asset restraints. *See Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). Here, an *Ex Parte* restraint of Defendants' assets is needed to ensure an equitable accounting of Defendants' profits and sales of Infringing Products. As stated previously, Defendants can easily use anonymous seller aliases to evade detection and transfer assets to financial institutions outside of this Court's jurisdiction upon notice of a lawsuit. Ex. 1, at ¶ 16. With very little publicly available identifying information,

Plaintiff strongly believe that Defendant holds most of their assets outside of the United States, allowing Defendant to easily hide or dispose of assets. *Id.* An *Ex Parte* restraint should account for these circumstances and ensure Defendants' compliance.

Plaintiff is also entitled to recover "the extent of [Defendant's] total profit." *See* 35 U.S.C. § 289. In order to ascertain such profits, Plaintiff seeks an accounting and payment from Defendants of all profits realized by Defendants from Defendant's unlawful conduct. The Eleventh Circuit supports the freeze of assets to preserve the potential profits. *S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005) (finding that an "asset freeze is justified as means of preserving funds for the equitable remedy of disgorgement"). Unless Defendant's assets are frozen, Defendants will likely hide or move their ill-gotten gains to offshore bank accounts. Accordingly, a reasonable asset restraint to facilitate a proper accounting and monetary award from Defendants is warranted.

### iii.    A Minimal Bond Should Secure Injunctive Relief

Because the Plaintiff's probability of succeeding on the merits is so high, no bond is needed on behalf of Plaintiff upon the issuance of an *Ex Parte* TRO.  Although requiring a security upon issuance of a TRO is within the sound discretion of this Court, "the court may elect to require not security at all." *TracFone Wireless, Inc. v. Wash.,* 978 F. Supp. 2d 1225, 1235 (M.D. Fla. 2013) (quoting *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005); *see also* Fed. R. Civ. P. 65(c). When a Plaintiff demonstrates a high likelihood of success

16

on the merits, the Court does not require Plaintiff to post a bond. *Chanel, Inc. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 25-CV-21771, 2025 WL 2836354, at *6 (S.D. Fla. Apr. 21, 2025) (quoting *Harris v. Hous. Auth. of City of Daytona Beach*, No. 6:01–cv–254, 2001 WL 36404273, at *5 (M.D. Fla. Apr. 25, 2001)). ETN submits evidence demonstrating Defendant's blatant infringement and, thus, no bond is necessary.

## CONCLUSION

ETN provides substantial evidence to demonstrate the necessary requirements for this Court to grant the requested *Ex Parte* TRO. Absent such relief, Defendant will continue to infringe on ETN's patent and cause irreparable harm to ETN, in contravention of the public's interest in enforcing valid patents. Accordingly, this Court should enter an *Ex Parte* TRO and stop Defendant from infringing on the '925 Patent. As ETN established the elements required for this Court to issue a preliminary injunction, that shall remain in effect during the pendency of this action, or until such further date as set by the Court or stipulated to by the parties. ETN requests this Court Order the following:

1. Under further order of this Court, Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice are hereby restrained and enjoined from:

a. manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products infringing upon ETN's Patent, or any

confusingly similar products, other than those actually manufactured or distributed by ETN; and

b. secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by ETN, that are infringing upon ETN's Patent; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products infringing upon ETN's Patent, or any confusingly similar trademarks.

c. listing, offering, and removing any application used in conjunction with the infringing productions available on the iOS app store, Google Play store, or any other similar platform offering smart phone applications for purchase or download.

2.    Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them shall immediately discontinue, until further order of this Court, the manufacturing and sale of products infringing upon ETN's Patent, on or in connection with all Internet based e-commerce store businesses owned, operated, or controlled by Defendant including any Internet-based e-commerce store;

3.    Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant shall immediately discontinue, until further order of this Court, the manufacturing and sale of products infringing upon ETN's Patent, or any confusingly similar trademarks within metatags or other markers within website source code, from use on any

18

webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to Internet based e-commerce stores registered by, owned, or operated by Defendant, including any Internet-based e-commerce store;

4.    Defendant shall continue to preserve copies of all computer files relating to the use of any of the Internet-based e-commerce store website businesses under its Seller ID and shall take all steps necessary to retrieve computer files relating to the use of the Internet-based e-commerce stores under its Seller ID that may have been deleted before the entry of this TRO;

5.    This TRO shall apply to the Seller IDs, associated e-commerce stores, and any other seller identification names, e-commerce stores, which are being used by Defendant for the purpose of manufacturing, marketing, or selling products infringing upon ETN's Patent at issue in this action and/or unfairly competing with Plaintiff;

6.    Under Rule 65(c), Florida Rules of Civil Procedure, and Plaintiff's strong likelihood of success on the merits, no bond is required of Plaintiff.

Dated: July 17, 2026

Respectfully submitted,

/s/ Thomas H. Stanton
Thomas H. Stanton
Florida Bar No. 127444
Geneva K. Hernandez
Florida Bar No. 1018057
**OLDER LUNDY KOCH & MARTINO**
1000 W. Cass Street

19

Tampa, Florida 33606
T: (813) 915-6795
E: tstanton@olderlundylaw.com
ghernandez@olderlundylaw.com